**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BYRON CHAPIN MYERS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | No. 2:20-CV-0151-DMC-P<br><br><br><br>ORDER |

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is plaintiff's complaint (ECF No. 1).

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the

complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff, Byron Chapin Myers, is an inmate at California Health Care Facility. Plaintiff names the following defendants: (1) California Department of Corrections and Rehabilitation (CDCR) and (2) Ralph Diaz, Secretary of the CDCR. Plaintiff alleges that defendants violated his right to reasonable accommodations under Title II of the Americans with Disabilities Act (ADA) by refusing to provide him with adequate dental care. Plaintiff seeks a declaratory judgment stating that defendants violated the ADA by refusing to provide plaintiff with dental implants so that he could eat without being in danger of choking. Plaintiff also seeks an injunction mandating that defendants arrange for plaintiff to obtain dental implants, ensure that plaintiff receive adequate follow-up treatment and instructions to maintain proper dental and oral health, and grant any further relief to which plaintiff may be entitled.

Plaintiff has a seizure disorder and experiences between 4-18 seizures annually while on seizure medications. If unmedicated, plaintiff experiences prolonged seizure episodes lasting upwards of eight hours. Plaintiff alleges that there have been previous instances in the correctional facility when he did not receive the proper dose of his antiseizure medications and suffered intense seizure episodes for days. See ECF No. 1, pg. 4; ECF No. 1, pg. 14. Plaintiff lost mobility in his left arm, left hand, and all but two fingers on his right hand due to his seizure disorder. Consequently, he cannot use a standard toothbrush because he cannot grasp it well enough to brush his teeth.

///

///

In 1998, plaintiff claims that prison dental officials placed him on an accelerated cleaning regime where he would see a dental hygienist once every two weeks. However, plaintiff alleges that the cleanings only took place approximately once every three to seven months. Plaintiff claims that his teeth decayed and his gums became diseased due to the lack of brushing, flossing, and cleaning for prolonged periods of time. Plaintiff alleges that instead of attempting to repair his teeth, prison officials would prescribe plaintiff with antibiotics for his infections and extract his rotten teeth when it became the only option available.

Plaintiff alleges that he first made a request to have his partial dentures replaced on January 11, 2011. Plaintiff claims that the dentist refused to order new partial dentures because plaintiff did not have enough teeth in his mouth to anchor them which made the dentures too great a choking hazard due to plaintiff's seizure condition.

Plaintiff claims that he was issued an electric toothbrush on February 21, 2014. Plaintiff alleges that he still could not effectively use the electric toothbrush. Plaintiff alleges that his primary care dentist informed him that he needed another ten teeth extracted on February 3, 2017. Plaintiff claims he once again requested new partial dentures. Plaintiff alleges that his primary care dentist told him he could not get new dentures until he had all his teeth extracted and could receive a full pair.

Plaintiff discovered dental implants through independent research. Plaintiff claims that he submitted a Health Care Services Request Form to the Dental Department at CDCR requesting dental implants on May 1, 2017. See ECF No. 1, pg. 7. Plaintiff alleges that Doctor Dowlatshahi, who is not named as a defendant in plaintiff's complaint, falsely wrote that he informed plaintiff of the prison's ban on dental implants during a triage on May 12, 2017. See ECF No. 1, pg. 8. Plaintiff claims he also filed a Reasonable Modification or Accommodation Request for dental implants on August 28, 2017. Id. Plaintiff alleges a supervising dentist then interviewed him on September 8, 2017 and denied his request on September 13, 2017. See ECF No. 1, pg. 9. Plaintiff filed a second-level appeal on October 2, 2017. See ECF No. 1, pg. 10. The same supervising dentist interviewed plaintiff on October 24, 2017. Id. The dentist's report of the interview stated that dentures were not safe for plaintiff due to his high risk of choking and a

1    reasonable alternative would be a mechanical soft, ground, or chopped diet. Id. Plaintiff's second
2    level claim was denied December 2, 2017. See ECF No. 1, pg. 11.
3           Plaintiff filed a Headquarters Level Response on December 18, 2017. Id.
4    Headquarters denied plaintiff's request on April 3, 2018. See ECF No. 1, pg. 12. Headquarters'
5    letter to plaintiff stated that plaintiff refused extractions of his non-restorable teeth knowing that
6    dentures could not be provided without the extractions. Id.
7           Plaintiff submitted an ADA request for regular teeth cleaning and gum stimulation
8    on April 6, 2017. See ECF No. 1, pg. 13.  Plaintiff followed up on April 14, 2017 and April 25,
9    2017 after he did not receive a response to his initial request. Id. Plaintiff also requested
10   replacement heads for his electric toothbrush on July 1, 2018. See ECF No. 1, pg. 14. Plaintiff
11   received a response from the dental clinic stating that they did not carry electric toothbrush
12   supplies. Id. Plaintiff then submitted a reasonable accommodation request for a replacement
13   toothbrush heads on July 5, 2018. See ECF No. 1, pg. 15. Plaintiff received a reply from his
14   primary care dentist stating that they did not carry replacement toothbrush heads and the dentist
15   forwarded the request to the reasonable accommodations board. Plaintiff did not receive a
16   response from the reasonable accommodations board. Id.
17          Plaintiff claims that defendants' refusal to provide plaintiff with regular teeth
18   cleanings led him to lose all his natural teeth. Plaintiff also claims that the CDCR staff's refusal to
19   provide him with dentures that are not an unreasonable choking hazard violate his ADA-protected
20   right to benefit from eating and digestion, which are activities provided to other inmates. See ECF
21   No. 1, pg. 16. Plaintiff alleges that defendants cannot refuse to provide plaintiff with equal
22   opportunity to safely eat regularly prepared meals and derive their nutritional benefits. Id.
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

4

## II. DISCUSSION

The Court finds that plaintiff's claim suffers three defects. First, the Eleventh Amendment bars plaintiff from suing the California Department of Corrections and Rehabilitation. Second, plaintiff has failed to allege a sufficient causal link between defendant Diaz and the alleged ADA violations. Third, plaintiff cannot allege a cognizable ADA claim regarding dental implants due to plaintiff's access to numerous suitable alternatives.[1]

### A.   Claims Against CDCR

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states. See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991). This prohibition extends to suits against states themselves, and to suits against state agencies. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

Here, the Eleventh Amendment bars plaintiff from stating a cognizable claim against the CDCR. The CDCR is the state agency responsible for the incarceration and correction of prisoners in California. Thus, CDCR also receives Eleventh Amendment immunity from suit.

### B.   Claims Against Ralph Diaz

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government

---

[1] It may be possible for plaintiff to state a claim related to his dental care under the Eighth Amendment, the current complaint asserts liability under the ADA only. The Court cannot express an opinion on a claim that has not been pleaded. The Court can, however, provide plaintiff with an opportunity to amend to allege other theories of liability.

1  officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct
2  and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory
3  personnel who implement a policy so deficient that the policy itself is a repudiation of
4  constitutional rights and the moving force behind a constitutional violation may, however, be
5  liable even where such personnel do not overtly participate in the offensive act.  See Redman v.
6  Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

7  When a defendant holds a supervisory position, the causal link between such
8  defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.
9  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
10  1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in
11  civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
12  Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the
13  official's own individual actions, has violated the constitution."  Iqbal, 662 U.S. at 676.

14  Here, plaintiff has failed to allege a sufficient causal link between Diaz and the
15  alleged ADA violations. Plaintiff only claims that Diaz, as Secretary and Chief Executive of the
16  CDCR, cannot refuse to provide plaintiff with equal access to the programs, services, and
17  activities provided to other inmates. See ECF No. 1, pg. 16. Plaintiff is presumably referring to
18  CDCR's refusal to provide plaintiff with dental implants and adequate dental care. However,
19  plaintiff does not sufficiently explain Diaz's relationship to these alleged violations. Plaintiff does
20  not allege that Diaz directly participated in the alleged events. Plaintiff also does not offer any
21  claims suggesting Diaz implemented the policy that prevented plaintiff's access to adequate
22  dental care or dental implants. As a result, plaintiff has failed to allege a sufficient causal link
23  between Diaz and the alleged ADA violations.

24  **C.     Plaintiff's Claim Regarding Dental Implants**

25  Both the Americans with Disabilities Act, 42 U.S.C. § 12132, and the
26  Rehabilitation Act, 29 U.S.C. § 794, apply in the prison context. See United States v. Georgia,
27  546 U.S. 151, 154 (2006); Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998); Armstrong v.
28  Schwarzenegger, 622 F.3d 1058, 1063 (9th Cir. 2010).

The Ninth Circuit has determined the standard advanced in Turner v. Safley, 482 U.S. 78, 107 (1987) applies to the analysis of statutory rights in a prison setting. See Gates v. Rowland, 39 F.3d 1439, 1445-46 (9th Cir. 1994). Under Turner, a regulation is valid if it is reasonably related to legitimate penological interests. Id. In Casey v. Lewis, 4 F.3d 1516, 1520 (9th Cir. 1993), the Ninth Circuit synthesized the four Turner factors as: (1) whether there is a valid, rational connection between a prison policy and a legitimate government interest; (2) whether there are alternative means for the plaintiff to exercise the right, (3) the impact the accommodation of the constitutional right will have on guards, on other inmates, or on the allocation of prison resources, and (4) whether the regulation or policy is an exaggerated response to prison concerns. Id.

Here, plaintiff cannot succeed on an ADA claim for his dental implants because there are alternative means for plaintiff to exercise his right to eat. Plaintiff provided a statement from the prison's supervising dentist stating that a modified diet would address plaintiff's issues equally effectively. See ECF No. 1, pg. 10. Plaintiff also provided a statement from Headquarters stating that the prison office offered plaintiff a full set of dentures so long as plaintiff had his remaining teeth removed. See ECF No. 1, pg. 12-13. While the ADA entitles plaintiff to reasonable accommodations, it does not entitle plaintiff to his preferred accommodation. See 42 U.S.C.A § 12101.

Insofar as plaintiff attempts to allege that the medical staff's refusal to provide plaintiff with dental implants constituted inadequate care, the ADA is not the appropriate vehicle for plaintiff's relief. The ADA is a remedy for discrimination, not medical malpractice, and therefore does not prohibit inadequate treatment for disability. See Simmons v. Navajo Cty., 609 F.3d 1011, 1022 (9th Cir. 2010).

///
///
///
///
///

### III. CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the following choices: (1) plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the court will address the remaining claims; or (2) plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the Court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

///

///

///

8

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend; and

2. Plaintiff shall file an first amended complaint within 30 days of the date of service of this order.

Dated: July 29, 2020

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE